T.C. Memo. 2009-9

UNITED STATES TAX COURT

ROBINSON KNIFE MANUFACTURING COMPANY, INC. AND SUBSIDIARY,
Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21514-06.                    Filed January 14, 2009.

Robert J. Lane, Jr. and Alice A. Joseffer, for petitioner.

Jennifer McGinty and Grant Gabriel, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined the following deficiencies in the Federal income tax of Robinson Knife Manufacturing Co. and Subsidiary:[1]

_____

[1]Robinson Knife Manufacturing Co., the parent corporation, and a subsidiary corporation are an affiliated group
(continued...)

| TYE | Deficiency |
|---|---|
| Mar. 1, 2003 | $123,902 |
| Feb. 28, 2004 | 16,419 |

Robinson Knife Manufacturing Co. and Subsidiary, hereinafter collectively referred to as petitioner, filed a petition to redetermine the deficiencies. After concessions,[2] the issues we must decide are: (1) Whether petitioner must capitalize under section 263A[3] royalties incurred in connection with two trademark licensing agreements and (2) if so, whether respondent properly allocated the royalties to ending inventory using the simplified production method.

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulation of facts into our findings by this reference. When the petition was filed, petitioner's principal place of business was in the State of New York.

---

[1](...continued)
(petitioner) that filed consolidated returns for the periods at issue.

[2]Petitioner concedes that during the years at issue it incurred and paid royalties, other than the royalties in dispute, of $20,613 and $12,501 and that those royalties should be capitalized under sec. 263A.

[3]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Petitioner's Operations

Petitioner is a corporation engaged in the business of designing, developing, manufacturing, marketing, and selling kitchen tools and gadgets used in food preparation and service (kitchen tools).[4]  Petitioner markets and sells the kitchen tools to large retailers in the United States and Canada, including, among others, Wal-Mart, Target, Bed Bath & Beyond, Kohl's, and Sears.

Petitioner entered into licensing agreements for the right to use well-known trademarks in connection with some of the kitchen tools it produces and sells.  In return petitioner generally pays the trademark licensors royalties based on a percentage of net sales of the kitchen tools bearing the licensors' trademarks.  Petitioner also produces and sells kitchen tools under its own brand names, including America Cooks and Chip Clip, but it does not pay any royalties on the sale of those kitchen tools.  Petitioner also produces and sells kitchen tools to retailers in packaging bearing the retailers' brand names.

Generally, the idea for a new line of kitchen tools originates with petitioner.  Petitioner decides which licensed trademark would be most appropriate for the new kitchen tools and

---

[4]Examples of petitioner's kitchen tools include spoons, soup ladles, potato peelers, spatulas, turners, timers, pastry brushes, and cooking thermometers.

then seeks a trademark license from either an existing licensor or a new licensor. Once petitioner has chosen a licensed trademark for the new kitchen tools, it hires an industrial designer to sketch the new kitchen tools. The industrial designer is also responsible for getting the trademark licensor's approval that a particular trademark is appropriate for the new kitchen tools. Petitioner owns the product designs it develops.

After petitioner obtains a product design and the trademark licensor's approval, petitioner contracts with unrelated manufacturers, generally in China, to manufacture the new kitchen tools according to petitioner's product design. The manufacturing contracts generally provide that the manufacturer will deliver the finished kitchen tools, including the packaging. The manufacturer either packages the manufactured kitchen tools itself or outsources the packaging to a third party.[5] Once the manufacturer completes the kitchen tools, including the packaging, petitioner purchases them from the manufacturer for resale to retailers in the United States and Canada.

For kitchen tools manufactured under a licensed trademark, the licensed trademark appears on the front of the packaging of each kitchen tool and sometimes in additional places. The licensed trademark sometimes appears on the kitchen tool itself.

---

[5]Petitioner has occasionally packaged its kitchen tools itself, but generally it does not.

Petitioner's name sometimes appears on the back of the packaging or inside an attached card. On packaging with both the licensed trademark and petitioner's name, the licensed trademark is featured more prominently than petitioner's name. Sometimes on the back of the packaging petitioner includes a warranty against breakage occurring during normal use.

Petitioner does not advertise its branded kitchen tools through magazines, newspapers, broadcast media, direct mailings, or billboards. Petitioner instead relies on the reputation of the well-known trademarks to entice customers at the point of sale to purchase its kitchen tools bearing the licensed trademarks. Petitioner uses the trademarks on point-of-sale displays in retail outlets and on its Web site and exhibits its kitchen tools bearing the licensed trademarks at trade shows and at its facility in New York.

During the years at issue petitioner had licensing agreements for the use of trademarks from Corning, Inc. (Corning), and Oneida, Ltd. (Oneida), and produced and sold kitchen tools using trademarks owned by Corning and Oneida.[6] Corning owns the Pyrex brand, a popular kitchen brand that includes tempered clear-glass ovenware. Oneida is a well-known producer of glass, ceramic dinnerware, and metal tableware. For

---

[6]Petitioner also licensed trademarks from other licensors but concedes that the royalties paid to other licensors are required to be capitalized under sec. 263A.

over 80 years, Corning and Oneida have conducted substantial and continuous advertising and marketing activities to develop widespread awareness and goodwill with respect to their trademarks.  Both trademarks are well known among retailers and consumers of kitchen tools, and consumers purchasing kitchen tools bearing the Pyrex or Oneida trademark likely expect a high-quality product.

Corning License Agreement

During the years at issue petitioner had a trademark license agreement with Corning (Corning license agreement) for the exclusive right to manufacture, distribute, and sell kitchen tools using the Pyrex trademark (Pyrex-branded kitchen tools). Under the Corning license agreement, petitioner had the right to create its own advertising, packaging, and other promotional materials using the Pyrex trademark in connection with the manufacture, distribution, or sale of Pyrex-branded kitchen tools.  In return petitioner agreed to pay Corning royalties equal to 8 percent of the net wholesale billing price (less returns from customers, certain taxes and other costs, and sales commissions) of the Pyrex-branded kitchen tools sold.  The royalties were due within 30 days following the end of each 3-month period.

The Corning license agreement imposed certain terms and conditions of quality control over the Pyrex-branded kitchen

tools.  First, Corning required that petitioner provide samples of the Pyrex-branded kitchen tools produced and any applicable sales materials for inspection and testing.  If any Pyrex-branded kitchen tool did not comply with Corning's quality standards, petitioner had to correct the deficiency or discontinue the manufacture, distribution, and sale of the deficient Pyrex-branded kitchen tool.  Second, petitioner could not engage in any course of conduct that would damage the goodwill and reputation or dilute the value or strength of the Pyrex trademark.  Third, Corning had to approve all advertising, packaging, or other promotional materials bearing the Pyrex trademark, and petitioner could not use any material that violated the Corning license agreement.

Oneida License Agreement

During the years at issue petitioner also had a trademark license agreement with Oneida (Oneida license agreement) for the exclusive right to manufacture and sell kitchen tools using the Oneida trademark (Oneida-branded kitchen tools).  Under the Oneida license agreement, petitioner agreed to pay Oneida a royalty of 11 percent on net sales up to $1 million and 8 percent on net sales of $1 million or more of Oneida-branded kitchen tools sold.  The royalties were due within 30 days after the end of each 3-month period.

The Oneida license agreement imposed certain terms and conditions to ensure quality control over the Oneida-branded kitchen tools. First, Oneida requested samples of all Oneida-branded kitchen tools so that it could decide whether to authorize petitioner's use of the Oneida trademark on or in connection with the production of petitioner's kitchen tools. A list of all approved Oneida-branded kitchen tools was incorporated into a schedule attached to the Oneida license agreement. Petitioner could add to or delete from the schedule in response to market conditions or new product development. Second, petitioner agreed to submit to Oneida examples of any packaging, promotional materials, displays, and advertisements using the Oneida trademark. Third, petitioner had to use its best efforts to give Oneida's representatives the opportunity to visit any plant or office in which petitioner manufactured kitchen tools to inspect manufacturing methods, advertising materials, letterheads, and any other printed materials that may bear the Oneida trademark. Oneida reserved the right to terminate the Oneida license agreement if the working conditions in the manufacturing facilities violated certain laws or otherwise embarrassed Oneida or diminished the goodwill of the Oneida trademark.

Petitioner's Tax Reporting

Petitioner timely filed its Forms 1120, U.S. Corporation Income Tax Return, for taxable years ending March 1, 2003, and February 28, 2004 (tax returns). Petitioner uses the accrual method of accounting and the first-in, first-out inventory method. Petitioner uses the simplified production method, see sec. 1.263A-2(b)(1), Income Tax Regs., for allocating warehouse salaries and related fringe benefits, warehouse depreciation, real estate taxes, warehouse building rental, and warehouse utilities and repairs.

For the taxable years ending March 1, 2003, and February 28, 2004, petitioner incurred and paid royalties to Corning and Oneida for the use of the Pyrex and Oneida trademarks of $2,184,252 and $1,741,415, respectively. Petitioner deducted the royalty payments as ordinary and necessary business expenses on its tax returns.

In a notice of deficiency, respondent determined that petitioner must capitalize the royalties under section 263A. Using the simplified production method, respondent determined that $364,420 and $48,293 were allocable to petitioner's ending inventory for the taxable years ending March 1, 2003, and February 28, 2004, respectively, and includable in petitioner's cost of inventory.

OPINION

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving its entitlement to the deduction it claimed.[7]  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 162(a) permits a deduction for a taxpayer's ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Advertising and other selling expenses are examples of deductible business expenses under section 162.  Sec. 1.162-1(a), Income Tax Regs.  However, no item shall be included in deductible business expenses to the extent that the item is used by the taxpayer in computing the cost of property included in its inventory.  Id.

Section 263A was enacted as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 803(a), 100 Stat. 2350.  In enacting section 263A, Congress intended that a single, comprehensive set

---

[7]Where a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the tax liability of the taxpayer, the burden of proof shifts to the Commissioner, but only if the taxpayer has complied with substantiation requirements, has maintained all required records, and has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a).  Although respondent concedes that he bears the burden of proof under sec. 7491 as to any factual issue and we assign the burden of proof to respondent in accordance with that concession, our findings of fact are based on the preponderance of the evidence and not on any allocation of the burden of proof. See Knudsen v. Commissioner, 131 T.C. ___ (2008).

of rules generally should govern the capitalization of costs of producing, acquiring, and holding property in order to more accurately reflect income and make the tax system more neutral. Suzy's Zoo v. Commissioner, 273 F.3d 875, 879 (9th Cir. 2001), affg. 114 T.C. 1 (2000); S. Rept. 99-313, at 140 (1986), 1986-3 C.B. (Vol. 3) 1, 140.  The term "produce" has been construed broadly in order to give effect to legislative intent.[8]  E.g., Suzy's Zoo v. Commissioner, supra at 879-880 (taxpayer was "producer" of greeting cards manufactured by third-party contractors); Von-Lusk v. Commissioner, 104 T.C. 207, 214-216 (1995) (taxpayer's meetings with governmental officials, obtaining building permits, and drafting architectural plans constituted part of "production").

The capitalization rules of section 263A require that a taxpayer's direct costs and some indirect costs (including taxes) of producing property[9] that is inventory in the hands of the taxpayer be included in inventory costs.  Sec. 263A(a)(1)(A) and

---

[8]In general, sec. 263A(g)(1) defines the term "produce" to include "construct, build, install, manufacture, develop, or improve."

[9]For purposes of sec. 263A, property produced for the taxpayer under a contract with another party is treated as property produced by the taxpayer to the extent the taxpayer makes payments or otherwise incurs costs with respect to the property.  Sec. 263A(g)(2); Suzy's Zoo v. Commissioner, 273 F.3d 875, 879-880 (9th Cir. 2001), affg. 114 T.C. 1 (2000); sec. 1.263A-2(a)(1)(ii)(B), Income Tax Regs.  The kitchen tools manufactured by the unrelated manufacturers under contract with petitioner are treated as property produced by petitioner.

(2), (b)(1).  These costs must be capitalized[10] under section
263A without regard to whether they are incurred before, during,
or after the production period.  Sec. 1.263A-2(a)(3), Income Tax
Regs.  Direct costs include direct labor costs and material
costs, including the costs of those materials that become an
integral part of specific property produced and those materials
that are consumed in the production process and that can be
identified or associated with particular units of property
produced.  Sec. 1.263A-1(e)(2)(A), Income Tax Regs.  Indirect
costs include all costs other than direct costs, and only some
indirect costs are required to be capitalized.  Sec. 1.263A-
1(e)(3)(i), Income Tax Regs.

The regulations under section 263A provide a nonexclusive
list of indirect costs that must be capitalized to the extent the
costs are properly allocable to property produced.  See sec.
1.263A-1(e)(3)(ii), Income Tax Regs.  Included in the list are
licensing costs incurred in securing the contractual right to use
a trademark or other similar right associated with property
produced.  Sec. 1.263A-1(e)(3)(ii)(U), Income Tax Regs.
Specifically, section 1.263A-1(e)(3)(ii)(U), Income Tax Regs.,
provides:

[10]To capitalize means, in the case of property that is
inventory in the hands of a taxpayer, to include in inventory
costs.  Sec. 1.263A-1(c)(3), Income Tax Regs.

(ii)  <u>Examples of indirect costs required to be capitalized</u>.--The following are examples of indirect costs that must be capitalized to the extent they are properly allocable to property produced or property acquired for resale:

\*     \*     \*     \*     \*     \*     \*

(U)  <u>Licensing and franchise costs</u>.-- Licensing and franchise costs include fees incurred in securing the contractual right to use a trademark, \* \* \* or other similar right associated with property produced or property acquired for resale.  These costs include the otherwise deductible portion (e.g., amortization) of the initial fees incurred to obtain the license or franchise and any minimum annual payments and royalties that are incurred by a licensee or a franchisee.

On the other hand, some indirect costs are specifically excluded from the capitalization rules.  See sec. 1.263A-1(e)(3)(iii), Income Tax Regs.  Examples of those indirect costs include marketing, selling, advertising, and distribution costs, sec. 1.263A-1(e)(3)(iii)(A), Income Tax Regs., which are generally deductible business expenses under section 162, sec. 1.162-1(a), Income Tax Regs.

Respondent asserts that the royalties paid for the right to use the Pyrex and Oneida trademarks in producing the Pyrex- and Oneida-branded kitchen tools are indirect costs, i.e., licensing costs, under section 1.263A-1(e)(3)(ii)(U), Income Tax Regs.  We agree.  Petitioner incurred royalties for licensing the right to use the Pyrex and Oneida trademarks in manufacturing the Pyrex- and Oneida-branded kitchen tools it produced, and the regulations under section 263A specifically require that those licensing

costs be capitalized to the extent they are properly allocable to property produced.

Indirect costs are properly allocable to property produced when the costs directly benefit or are incurred by reason of the performance of production activities. Sec. 1.263A-1(e)(3)(i), Income Tax Regs. Whether petitioner's royalties are properly allocable to property produced is a question of fact.[11]

Petitioner argues that the royalties did not directly benefit its production activities and thus are not properly allocable to property produced. However, petitioner failed to address whether the royalties were incurred by reason of petitioner's production activities.[12] The Corning and Oneida license agreements gave petitioner the right to manufacture the Pyrex- and Oneida-branded kitchen tools, and without the license agreements, petitioner could not have legally manufactured them. In addition to securing the licenses for the trademarks,

---

[11]Respondent argues that this case involves a legal issue; i.e., whether the royalties are licensing fees capitalizable under sec. 263A or whether they are deductible marketing and advertising costs under sec. 162. Although the issue of whether licensing fees, such as the royalties, are indirect costs capitalizable under sec. 263A is a legal issue, the issue of whether the royalties are properly allocable to property produced by petitioner is a factual issue. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 86 (1992). In any event, it does not appear that the characterization of the issue as one of law or of fact or of mixed law and fact affects the outcome. See supra note 6.

[12]Although petitioner alludes to the "incurred by reason of" test, it addresses only the "directly benefited" test.

obtaining approval from the licensors to use the Pyrex and Oneida trademarks on new kitchen tools was also an integral part of developing and producing the Pyrex- and Oneida-branded kitchen tools. For example, the industrial designers that petitioner hired conferred with the licensors to ensure that the new kitchen tools were appropriate for a particular trademark. After the new kitchen tools were manufactured, Corning and Oneida had the right to inspect and approve the finished kitchen tools before petitioner marketed and sold them to customers. We conclude that acquiring the right to use the Pyrex and Oneida trademarks was part of petitioner's production process. Consequently, the royalties paid to Corning and Oneida directly benefited petitioner's production activities and/or were incurred by reason of petitioner's producing the Pyrex- and Oneida-branded kitchen tools and are therefore indirect costs properly allocable to the Pyrex- and Oneida-branded kitchen tools petitioner produced.[13]

Petitioner contends that the royalties paid to Corning and Oneida for petitioner's use of the licensed trademarks are marketing expenses that are exempt from the capitalization rules

---

[13]The fact that the amount of royalties petitioner owed Corning and Oneida was calculated on the net sales of the Pyrex- and Oneida-branded kitchen tools does not alter our conclusion. We have held that a taxpayer must capitalize royalties incurred for the right to use an intangible in a production process where the amount of the royalties was calculated on the basis of net sales. See Plastic Engg. & Technical Servs., Inc. v. Commissioner, T.C. Memo. 2001-324.

of section 263A. Specifically, petitioner argues that expenditures to obtain a marketing advantage, to retain customers, and to attract new customers are deductible marketing expenses. In support of its argument, petitioner relies on Rev. Rul. 2000-4, 2000-1 C.B. 331, in which the Commissioner determined that indirect costs incurred to obtain, maintain, and renew ISO 9000 certification were not subject to capitalization under section 263 or 263A. ISO 9000 was a voluntary certification comprising several specific requirements intended to ensure a quality process in providing products or services. Id. In the revenue ruling, the Commissioner concluded that those indirect costs were in connection with a quality control policy and that such costs were specifically exempted from the capitalization rules under the section 263A regulations. Id.

Petitioner's reliance on Rev. Rul. 2000-4, supra, is misplaced. The royalties paid to Corning and Oneida were not in connection with implementing a quality control policy but rather were licensing costs for the right to use the Pyrex and Oneida trademarks in connection with petitioner's production of kitchen tools, and the section 263A regulations specifically require that such licensing costs be capitalized under section 263A.[14]

---

[14]Petitioner does not contend that the sec. 263A regulations are invalid.

Although the Corning and Oneida license agreements permitted petitioner to produce kitchen tools that were arguably more marketable than petitioner's other kitchen tools,[15] the royalties were licensing fees that enabled petitioner to use the Pyrex and Oneida trademarks during the production process. As such, the royalties were properly allocable to the Pyrex- and Oneida-branded kitchen tools produced by petitioner because the royalties directly benefited and/or were incurred by reason of petitioner's production activities. Sec. 1.263A-1(e)(3)(i), Income Tax Regs. Consequently, we conclude that respondent properly determined that the royalties paid to Corning and Oneida were indirect costs that petitioner was required to capitalize under section 1.263A-1(e)(3)(i), Income Tax Regs.

Petitioner contends that if we hold that the royalties must be capitalized under section 263A, respondent erred in using the simplified production method to allocate the royalties to petitioner's ending inventory. Petitioner argues that the

---

[15]Respondent properly distinguishes between costs incurred for marketing, selling, or advertising and costs incurred to produce a more marketable product and argues that the regulations under sec. 263A reflect that distinction. Costs for marketing, selling, and advertising a taxpayer's products after they have been produced are not required to be capitalized under sec. 263A. See sec. 1.263A-1(e)(3)(iii)(A), (4)(ii)(B), (iv)(N), Income Tax Regs. Licensing costs such as the royalties incurred by petitioner to use the Pyrex and Oneida trademarks during its production process are indirect costs that directly benefited and/or were incurred by reason of petitioner's production activities. See sec. 1.263A-1(e)(3)(ii)(U), Income Tax Regs.

simplified production method is not appropriate for allocating the royalties to ending inventory because it results in a distortion of income and fails to match revenue with expenses.

The simplified production method is an allocation method for determining the additional section 263A costs properly allocable to ending inventory of property produced and other property on hand at the end of the taxable year. Sec. 1.263A-2(b)(1), Income Tax Regs. Additional section 263A costs include the costs, other than interest, that were not capitalized under the taxpayer's method of accounting immediately before the effective date of section 263A but that are required to be capitalized under section 263A. Secs. 1.263A-2(b)(3)(ii)(A)(1), 1.263A-1(d)(3), Income Tax Regs.

The simplified production method was designed to relieve the administrative burdens of complying with section 263A for producers who engage in a mass production of products on a repetitive and routine basis. T.D. 8131, 1987-1 C.B. 98, 102. The simplified production method differs from other cost accounting allocation methods in that it allocates a pool of costs between ending inventory and cost of goods sold using a ratio prescribed by the regulations rather than allocating individual costs to particular goods. Compare sec. 1.263A-2(b)(3), Income Tax Regs., with sec. 1.263A-1(f)(2), Income Tax Regs.

Petitioner uses the simplified production method for allocating warehouse and administrative salaries and related fringe benefits, warehouse depreciation, real estate taxes, warehouse building rental, and warehouse utilities and repairs. Because petitioner uses the simplified production method to allocate other additional section 263A costs, respondent argues that he properly allocated the royalties to ending inventory using the simplified production method and that the simplified production method does not create a distortion of income as petitioner contends.[16]

We agree that respondent properly applied the simplified production method to allocate the royalties to petitioner's ending inventory. The regulations under section 263A provide that if a producer elects the simplified production method for any trade or business, the producer generally must use it for all production activities associated with inventory property to which section 263A applies.[17] Sec. 1.263A-2(b)(2)(i)(A), Income Tax

_____

[16]The parties do not dispute that the royalties that petitioner paid to Corning and Oneida are additional sec. 263A costs if we hold (as we do) that the royalties must be capitalized.

[17]A taxpayer may elect to exclude from the simplified production method certain self-constructed assets. Sec. 1.263A-2(b)(2)(ii), Income Tax Regs. Self-constructed assets include assets produced by a taxpayer for use by the taxpayer in its trade or business. Sec. 1.263A-1(d)(1), Income Tax Regs. The Pyrex- and Oneida-branded kitchen tools were not self-constructed assets. In addition, sec. 1.263A-1(d)(2)(iii), Income Tax Regs.,
(continued...)

Regs.[18]  Petitioner has elected the simplified production method for allocating other additional section 263A costs, and therefore, petitioner is required to use the simplified production method to allocate the royalties.  Although the simplified production method may allocate costs differently than other accounting methods, such as the specific identification method described in section 1.263A-1(f)(2), Income Tax Regs.,[19] the simplified production method is intended to ease the administrative burdens of section 263A and by its nature may result in an allocation that is not as precise as other specific cost allocation methods.  This does not suggest that the simplified production method creates a distortion of income.  We conclude that respondent appropriately allocated the royalties to

---

[17](...continued)
provides that a taxpayer may change its method of accounting used in determining sec. 471 costs only with the consent of the Commissioner as required under sec. 446(e) and the regulations thereunder.  Sec. 471 costs are generally costs capitalized to inventory immediately before the enactment of sec. 263A.  Sec. 1.263A-1(d)(2), Income Tax Regs.  Petitioner has not requested consent under sec. 446(e) to change its method of accounting with respect to the royalties.

[18]Congress directed the Secretary to prescribe regulations as may be necessary or appropriate to carry out the purposes of sec. 263A.  Sec. 263A(i).

[19]A specific identification method traces costs to a cost objective, such as a function, department, activity, or product, on the basis of a cause and effect or other reasonable relationship between the costs and the cost objective.  Sec. 1.263A-1(f)(2), Income Tax Regs.

petitioner's ending inventory under the simplified production method.

We have considered all remaining arguments made by the parties for results contrary to those expressed herein, and to the extent not discussed above, we reject those arguments as irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.